1  Lionel Z. Glancy (#134180)
2  Michael Goldberg (#188669)
   Robert V. Prongay (#270796)
3  **GLANCY BINKOW & GOLDBERG LLP**
   1925 Century Park East, Suite 2100
4  Los Angeles, California 90067
5  Telephone: (310) 201-9150
   Facsimile:  (310) 201-9160
6  E-mail: info@glancylaw.com

7
8  Marc I. Gross
   Jeremy A. Lieberman
9  Lesley F. Portnoy
10 **POMERANTZ GROSSMAN HUFFORD**
       **DAHLSTROM & GROSS LLP**
11 600 Third Avenue, 20th Floor
12 New York, New York 10017-5516
   Telephone: (212) 661-1100
13 Facsimile:  (212) 661-8665

14
   Attorneys for Plaintiff
15 [Additional Counsel on Signature Page]

16          **UNITED STATES DISTRICT COURT**
17          **CENTRAL DISTRICT OF CALIFORNIA**

18 ────────────────────────     **CV13- 02607** SVW(Ex)
19 DAVID M. LORITZ, Individually     N._____
   and  on  Behalf  of  All  Others
20 Similarly Situated,                **CLASS ACTION**
                       Plaintiff,
21
22          v.                        **COMPLAINT FOR VIOLATIONS OF**
                                      **THE FEDERAL SECURITIES LAWS**
23
   EXIDE TECHNOLOGIES,
24 JAMES R. BOLCH, PHILLIP A.
   DAMASKA, R. PAUL HIRT, JR.,       **DEMAND FOR JURY TRIAL**
25 MICHAEL OSTERMANN,
26                     Defendants.
27 ────────────────────────

28
          COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff David M. Loritz individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by Exide Technologies ("Exide" or the "Company"), as well as media reports about the Company and conference call transcripts. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of the common stock of Exide between February 9, 2012 and April 3, 2013, inclusive (the "Class Period"), seeking to pursue remedies under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Defendants include Exide, its President and Chief Executive Officer, James R. Bloch ("Bloch"), Executive Vice President and Chief Financial Officer, Phillip A. Damaska ("Damaska"), President of Exide America, R. Paul Hirt ("Hirt") and President of Exide Europe, Michael Ostermann ("Ostermann").

2.      Defendant Exide was incorporated in Delaware on November 23, 1956 and is headquartered in Milton, GA. The Company operates in 80 countries, producing, recycling and distributing lead-acid batteries. The Company's global transportation and industrial energy groups provide a range of stored electrical energy products and services for industrial and transportation applications.

3.      On May 5, 2004, under a Plan of Reorganization from Chapter 11 bankruptcy, the Company issued 25,000,000 shares and listed its shares on NASDAQ under the trading symbol "XIDE."

4.     Among the various activities of the Company, Exide operates eight battery recycling facilities worldwide. Through these facilities the Company claims to recycle more than 30 million batteries per year and recovers more than two million pounds of lead per day, 25 million gallons of sulfuric acid per year and generates more than 30 million pounds of sodium sulfate.

5.     On March 22, 2013, one of the Company's recycling facilities in Vernon, California, located approximately four miles due south of downtown Los Angeles, was cited by the South Coast Air Quality Management District (the "Agency") as posing a greater cancer risk to residents of Southern California than any of the more than 450 facilities the agency has regulated in the last 25 years.

6.     Following the Agency's citation, on April 3, 2013, Los Angeles City Council members held a public hearing asking the government to press charges against the Company to correct the health risk posed by the Company's environmental contamination.

7.     On April 4, 2013 news source Debtwire.com published a report that Exide had hired financial advisory firm Lazard and the law firm of Akin Gump LLP, both bankruptcy experts, to advise on its financial restructuring after prior restructuring efforts stalled.

8.     On this news, Exide's shares fell $1.24 a share to $1.37 a share (-46%), on April 4, 2013, before trading in the stock was halted.

9.     As a result of defendants' false statements, Exide stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down approximately 46%, eviscerating more than $90 million in market capitalization.

10.    The true facts, which were known by the Defendants but concealed from the investing public during the Class Period, were as follows:

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

2

(a)    Exide was polluting the environment with potentially fatal levels of arsenic, and exposing almost 110,000 residents near its Vernon, California battery recycling facility to dangerously high levels of pollutants;

(b)    Exide knew that based on actual and projected revenues and expenses it would not be able to meet its debt repayment obligations and other pledges and promises under its debt agreements and indentures. Specifically, the Company knew that it could not satisfy its obligations under a $200 million revolving facility, a $675 million bond, and a $55.7 million floating rate convertible note due in September 2013; and

(c)    as a result, Exide knew its environmental liabilities, debt obligations and potential insolvency supported neither Exide's statements to investors that the Company was solvent, its quarterly guidance, nor the inflated share price targets the investment community was modeling based on Defendants' Class Period statements and guidance.

11.    As a result of defendants' false statements, Exide stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Company's shares were hammered by massive sales, sending them down approximately 46%.

## JURISDICTION AND VENUE

12.    The claims asserted herein arise under §§10(b), 20(a) of the Exchange Act, 15 U.S.C. §§78j(b), 78t(a) and 78t-1, and Rule 10b-5, 17 C.F.R. §240.10b-5. Jurisdiction is conferred by §27 of the Exchange Act, 15 U.S.C. §78aa.

13.    Venue is proper in this district pursuant to §27 of the Exchange Act. Acts and transactions giving rise to the violations of law complained of occurred in this district. The Company's recycling facility that exposed residents to potentially fatal levels of arsenic lies just miles south from this District, and all the relevant witnesses and facts are within the jurisdiction of this District.

## THE PARTIES

14.    Plaintiff, David M. Loritz, purchased Exide common stock during the Class Period as set forth in the Certification attached hereto, and incorporated herein by reference, and suffered damages thereon.

15.    Defendant Exide is organized under the laws of the State of Delaware and headquartered in Milton, GA. During the Class Period, Exide had more than 79.3 million shares of common stock outstanding, which shares traded in an efficient market on the NASDAQ under the ticker symbol "XIDE." Exide was followed by scores of stock analysts and stock rating agencies and was constantly in communication with the markets and investors in quarterly conference calls and frequent presentations to investor and analyst conferences. Exide also filed periodic public reports with the SEC, and regularly issued press releases to the financial press.

16.    Defendant Bolch has served as Exide's President and CEO since July 2010.

17.    Defendant Damaska has served as Exide's Executive Vice-President and CFO since April 2008, prior to that time Mr. Damaska held Senior Vice-President and Controller roles at the Company.

18.    Defendant Hirt has served as President of Exide America since November 2011.

19.    Defendant Ostermann has served as President of Exide Europe since March 2010, he was previously President of the Company's Transportation Europe division.

20.    Defendants Bolch, Damaska, Hirt and Ostermann are sometimes referred to herein collectively as the "Individual Defendants."

21.    During the Class Period, the Individual Defendants ran Exide as "hands-on" managers overseeing Exide's operations and finances and made the material false and misleading statements described herein. The Individual Defendants were intimately knowledgeable about all aspects of Exide's financial and business operations, as they received daily reports and had access to computerized information regarding sales, costs and expenses, product demand, inventory management and problems with the

Company's recycling facilities, debt obligations and potential insolvency. They were also intimately involved in deciding which disclosures would be made by Exide. Indeed the Individual Defendants made various public statements for Exide during the Class Period, and participated in all Class Period investor conferences,

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

22.     The Class Period commences on February 9, 2012, on that day the Company reported its Fiscal 2012 Third Quarter Results. The Company's press release reported Net sales for the fiscal 2012 third quarter of $784.1 million versus $800.3 million in the prior year third quarter; Operating income for the current year period of $28.2 million versus $49.7 million of operating income in the third quarter of fiscal 2011; and Net income for the fiscal 2012 third quarter was $68.2 million or $0.84 per diluted share, the result of favorable discrete income tax items. This compared to the prior year period net income of $31.2 million or $0.38 per diluted share.

23.     Jim Bolch, President and Chief Executive Officer, stated, "[t]he decline in net sales this period is primarily due to the lack of normal seasonal weather across North America and Europe, which had an adverse impact on aftermarket transportation battery sales."

24.     On June 7, 2012 the Company reported its Fiscal 2012 Fourth Quarter Results. The Company's press release reported, "[n]et sales of $782.6 million versus $774.5 million in the prior year fourth quarter; Operating income was $15.9 million versus $9.3 million in the fourth quarter of fiscal 2011; Net loss was $2.7 million or ($0.03) per share as compared to the prior year period net loss of $13.7 million or ($0.18) per share; and Free cash flow generation was approximately $55.7 million compared to a use of cash of ($14.7 million) in the prior year period."

25.     Defendant Block stated, "[o]ur fourth quarter results improved over the comparative prior year period, principally due to lower restructuring and impairment charges. We are making steady progress with substantial opportunities for further

improvement in the areas of product cost, recovery through pricing and optimization of plant capacity."

26.    In the Company's 10-K filed on June 7, 2012, the Company failed to disclose the environmental liabilities of the Vernon, California facility in the Environmental Matters section of its annual report, nor the material likelihood of insolvency.

27.    On August 2, 2012 the Company reported Fiscal 2013 First Quarter Results. The Company's press release reported, "[f]iscal 2013 first quarter consolidated net sales were $693.4 million as compared to net sales of $745.1 million in the fiscal 2012 first quarter. Net sales in the fiscal 2013 period were negatively impacted by lead-related price decreases of approximately $26.8 million and foreign currency translation loss of $45.8 million."

28.    The Company's press release further stated that Exide, "achieved higher unit volume in aftermarket sales for Transportation Europe and Rest of World ("ROW"), and realized higher original equipment ("OE") unit sales in both Transportation segments when compared to the fiscal 2012 first quarter. Additionally in the current year period, the Company recorded higher sales throughout its global Network Power channels."

29.    In the Company's August 2, 2012 press release, Defendant Bolch stated, "[t]he benefit of price increases announced earlier this year was insignificant in the fiscal first quarter, but will be realized in July and beyond. In addition, we will continue to reduce third party lead sales as we move to close our recycling operation in Frisco, Texas."

30.    Also in the August 2 press release, Defendant Damaska, "[t]he Company continues to execute its strategy to right-size Transportation Americas through the announced closure of our Bristol, Tennessee battery plant and the closure and land sale of our Frisco, Texas lead recycling facility. We believe these actions, among other

ongoing initiatives will return the overall Americas region to profitability and allow us to ultimately utilize this long-lived deferred tax benefit."

31. Finally, the August 2 press release provided that, "[a]s of June 30, 2012, the Company had cash and cash equivalents of $130.1 million and $152.5 million of availability under its revolving bank credit facility. This compares to cash and cash equivalents of $155.4 million and $152.8 million of availability under the revolving bank credit facility at March 31, 2012. Given the seasonal nature of a large portion of our business, inventory is built during the first and second fiscal quarters. This resulted in a use of free cash flow in the amount of $21.0 million in the fiscal 2013 period, down from a use of $31.3 million in the prior year comparable period."

32. On November 9, 2012 the Company reported its Fiscal 2013 Second Quarter results. The Company's press release reported that, "[f]iscal 2013 second quarter consolidated net sales were $712 million as compared to net sales of $773 million in the fiscal 2012 second quarter. Net sales in the fiscal 2013 period were negatively impacted by both foreign currency translation ($41.7) million and lead related pricing ($30.5) million. The decrease was partially offset by increased sales in Industrial Energy Americas, higher unit sales in the original equipment ("OE") channel in both Transportation segments, and modest pricing in the Americas' aftermarket channel."

33. The November 9 press release also reported, "[g]ross profit for the quarter of $103.7 million, declined by $15 million when compared with the prior year period. A combination of continued high cost of spent batteries in the Americas, coupled with a lower LME price of lead weighed on results. The impact of this combination on the Americas business aggregated $18.6 million when compared to the prior year period; and was only partially offset by favorable pricing of $5.5 million, principally in the transportation aftermarket channel."

34. The November 9 press release further reported, "[f]iscal 2013 second quarter operating income was $6.8 million compared to $21.2 million in the prior year

second quarter. The decrease is primarily the result of higher spent battery input cost coupled with lower LME lead prices, and compressed margins on third party lead sales. Net loss for the current quarter was $13.9 million or ($0.18) per share compared to the prior year period net loss of $3.6 million or ($0.05) per share."

35.     Defendant Bolch stated, in the November 9 press release, "[w]e expect the normal seasonal nature of our business will result in higher revenue and substantially improved operating income in the second half of the fiscal year. This should be further supplemented by the combination of transportation aftermarket pricing and a better lead equation, assuming the cost of cores and LME lead pricing remain stable at the improved levels we saw in the month of October."

36.     On February 6, 2013 the Company reported Fiscal 2013 Third Quarter results. The Company's press release reported, "[f]iscal 2013 third quarter consolidated net sales were $804.9 million as compared to net sales of $784.1 million in the fiscal 2012 third quarter. Net sales in the fiscal 2013 period were negatively impacted by foreign currency translation of $10.2 million and lead related pricing of $16.3 million. Excluding the negative impact of foreign currency translation and lead-related pricing, net sales increased 6% primarily due to increased sales in the motive power and network power channels of both Industrial Energy segments as well as higher unit sales in the aftermarket channel in Transportation Europe."

37.     The February 6 press release continued, "[g]ross profit for the third quarter of $120.1 million, declined by $6.4 million when compared with the prior year period. Continued higher spent battery acquisition costs in the Americas combined with lower margins from third party lead sales negatively impacted gross margin by approximately $11 million. Improvement in spent battery acquisition costs in the U.S. began in November 2012. This trend has continued into the early part of the fiscal fourth quarter which should benefit both Americas businesses if the trend continues."

38.     The Company also reported in the February 6 press release, "[f]iscal 2013 third quarter operating income, excluding $15.8 million for restructuring and

impairment charges, was $20.5 million compared to $30.3 million, excluding $2.1 million for restructuring and impairment charges, in the prior year third quarter. The decrease is primarily due to lower gross profits discussed above. Current period restructuring charges were $5.2 million related to the closure of the Bristol, Tennessee flooded battery manufacturing facility, the idling of lead recycling operations in Reading, Pennsylvania and the closure of GNB India. Impairment charges of $10.6 million are principally related to asset write-downs for the closure of GNB India and the sale of the Australasia transportation business that was completed on February 4, 2013. Net loss for the fiscal 2013 third quarter was $15.4 million or $0.20 per share as compared to the prior year period net income of $68.2 million or $0.84 per share. Fiscal 2012 third quarter net income included the non-cash reversal of the tax valuation allowance in France for $76.7 million partially offset by a $13.4 million charge to settle a tax audit in Spain."

39.    Defendants' Class Period materially false and misleading statements concealed the large potential liability arising out of the toxic conditions of its Vernon, California facility, and the inability of the Company to meet its debt obligations and potential insolvency. As a result, Exide stock traded at artificially inflated prices during the Class Period.

40.    The true facts, which were known by the Defendants but concealed from the investing public during the Class Period, were as follows:

(a)    Exide's battery recycling facility was leaking arsenic into the environment, at levels a regulatory agency claimed it had not seen in 25 years, endangering over 100,000 residents in surrounding areas;

(b)    Exide knew that based on actual and projected revenues and expenses it would not be able to meet its debt repayment obligations and other pledges and promises under its debt agreements and indentures. Specifically, the Company knew that it could not satisfy its obligations under a $200 million revolving facility, a $675

million bond, and a $55.7 million floating rate convertible note due in September 2013; and

(c)     as a result, Exide knew its environmental liabilities, debt obligations and potential insolvency supported neither its statements to investors that the Company was solvent, its quarterly guidance, nor the inflated share price targets the investment community was modeling based on Defendants' Class Period statements and guidance.

## THE TRUTH EMERGES

41.     Finally, on April 4, 2013 various news sources reported that Los Angeles Council members had held a hearing calling for the city attorneys to take action against the Company to protect residents from the potentially fatal conditions caused by Exide's unhealthy practices. Also, on April 4, 2013, debtwire revealed that the Company had engaged the services of noted restructuring specialist firms Lazard and Akin Gump after the Company could not arrange financing through traditional means.

42.     On this news Company shares fell, on April 4, 2013, $1.24 a share to $1.37 a share (46%) before trading was halted.

43.     That same day,  the Company confirmed that financial advisory firm Lazard had been retained, "to advise the [C]ompany on financing alternatives to maximize the value of the [C]ompany for all stakeholders."

44.     As a result of Defendants' materially false and misleading statements, Exide stock traded at inflated levels during the Class Period. However, after the above revelations seeped into the market, the Exide shares were hammered by massive sales, causing a 46% decline, eviscerating more than $90 million in market capitalization.

## NO SAFE HARBOR

45.     Exide's "Safe Harbor" warnings accompanying its reportedly forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. Because most of the false and misleading statements related to existing facts or conditions, the Safe Harbor has no applicability. To the extent that known trends should have been included in the Company's financial reports

1  prepared in accordance with Generally Accepted Accounting Principles, they are

2  excluded from the protection of the statutory Safe Harbor. 15 U.S.C. §78u¬5 (b)(2)(A).

3  46.   The Defendants are also liable for any false or misleading FLS pleaded

4  because, at the time each FLS was made, the speaker knew the FLS was false or

5  misleading and the FLS was authorized and/or approved by an executive officer and/or

6  director of Exide who knew that the FLS was false. In addition, the FLS were

7  contradicted by existing, undisclosed material facts that were required to be disclosed so

8  that the FLS would not be misleading. Finally most of the purported "Safe Harbor"

9  warnings were themselves misleading because they warned of "risks" that had already

10  materialized or failed to provide meaningful disclosures of the relevant risks.

11  **ADDITIONAL SCIENTER ALLEGATIONS**

12  47.   As alleged herein, Defendants acted with scienter in that Defendants knew

13  that the public documents and statements issued or disseminated in the name of the

14  Company were materially false and misleading; knew that such statements or

15  documents would be issued or disseminated to the investing public; and knowingly and

16  substantially participated or acquiesced in the issuance or dissemination of such

17  statements or documents as primary violations of the federal securities laws. As set

18  forth elsewhere herein in detail, Defendants, by virtue of their receipt of information

19  reflecting the true facts regarding Exide, their control over, and/or receipt of

20  modification of Exide's allegedly materially misleading misstatements and/or their

21  associations with the Company which made them privy to confidential proprietary

22  information concerning Exide, participated in the fraudulent scheme alleged herein.

23  **APPLICABILITY OF PRESUMPTION OF RELIANCE:**
24  **FRAUD-ON-THE-MARKET DOCTRINE**

25  48.   At all relevant times, the market for Exide common stock was an efficient

26  market for the following reasons, among others:

27

28

1          (a)    Exide stock met the requirements for listing, and was listed and

2    actively traded on the NASDAQ, a highly efficient and automated market;

3          (b)    According to the Company's Form 10-K filed June 7, 2012, the

4    Company had 78,346,859 shares outstanding as of May 25, 2012. During the Class

5    Period, on average, more than half a million shares of Exide stock were traded on a

6    daily basis, demonstrating a very active and broad market for Exide stock and

7    permitting a very strong presumption of an efficient market;

8          (c)    as a regulated issuer, Exide filed periodic public reports with the

9    SEC;

10         (d)    Exide regularly communicated with public investors via established

11   market communication mechanisms, including regular disseminations of press releases

12   on the national circuits of major newswire services, the Internet and other wide-ranging

13   public disclosures, such as communications with the financial press and other similar

14   reporting services;

15         (e)    Exide was followed by many securities analysts who wrote reports

16   that were distributed to the sales force and certain customers of their respective firms

17   during the Class Period. Each of these reports was publicly available and entered the

18   public marketplace;

19         (f)    numerous National Association of Securities Dealers' member firms

20   were active market-makers in Exide stock at all times during the Class Period; and

21         (g)    unexpected material news about Exide was rapidly reflected in and

22   incorporated into the Company's stock price during the Class Period.

23       49.    As a result of the foregoing, the market for Exide common stock promptly

24   digested current information regarding Exide from publicly available sources and

25   reflected such information in Exide's stock price. Under these circumstances, all

26   purchasers of Exide common stock during the Class Period suffered similar injury

27   through their purchase of Exide common stock at artificially inflated prices, and a

28   presumption of reliance applies.

## LOSS CAUSATION

50.     During the Class Period, as detailed herein, Defendants made false and misleading statements, and omitted material information, concerning Exide's business fundamentals and engaged in a scheme to deceive the market.

51.     By artificially inflating and manipulating Exide stock price, Defendants deceived plaintiff and the Class and caused them losses when the truth was revealed. When Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, as detailed herein, it caused the price of Exide stock to fall precipitously as the prior artificial inflation came out of the stock price. As a result of their purchases of Exide stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

52.     This is a class action on behalf of those who purchased or otherwise acquired Exide common stock between February 9, 2012 and April 3, 2013, inclusive, excluding Defendants (the "Class"). Excluded from the Class are officers and directors of the Company as well as their families and the families of the Defendants. Class members are so numerous that joinder of them is impracticable.

53.     Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are: (a) whether the Defendants violated the Exchange Act; (b) whether the Defendants omitted and/or misrepresented material facts; (c) whether the Defendants knew or recklessly disregarded that their statements were false; (d) whether the Defendants artificially inflated the price of Exide common stock; and (e) the extent of injuries sustained by members of the Class and the appropriate measure of damages.

54.     Plaintiff's claims are typical of those of the Class. Prosecution of individual actions would create a risk of inconsistent adjudications. Plaintiff will adequately protect the interests of the Class. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

### For Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### Against All Defendants

55.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

56.    Throughout the Class Period, Defendants Exide and the Individual Defendants, pursuit of their scheme and continuous course of conduct to inflate the market price of Exide common stock, had the ultimate authority for making, and knowingly or recklessly made, materially false or misleading statements or failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

57.    During the Class Period, Defendants Exide and the Individual Defendants, and each of them, carried out a plan, scheme, and course of conduct using the instrumentalities of interstate commerce and the mails, which was intended to and, throughout the Class Period did: (a) artificially inflate and maintain the market price of Exide common stock; (b) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (c) cause Plaintiff and other members of the Class to purchase Exide common stock at inflated prices; and (d) cause them losses when the truth was revealed. In furtherance of this unlawful scheme, plan and course of conduct, Defendants Exide and the Individual Defendants, and each of them, took the actions set forth herein, in violation of §10(b) of the Exchange Act and Rule 10b-5, 17 C.F.R. §240.10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

58.    In addition to the duties of full disclosure imposed on Defendants Exide and the Individual Defendants as a result of their affirmative false and misleading statements to the investing public, these Defendants had a duty to promptly disseminate truthful information with respect to Exide's operations and performance that would be material to investors in compliance with the integrated disclosure provisions of the SEC, including with respect to the Company's revenue and earnings trends, so that the market

price of the Company's securities would be based on truthful, complete and accurate information. SEC Regulations S-X (17 C.F.R. §210.01, *et seq.*) and S-K (17 C.F.R. §229.10, *et seq.*).

59.    Defendants Exide and the Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein or acted with reckless disregard for the truth in that they failed to ascertain and disclose such facts, even though such facts were either known or readily available to them.

60.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts as set forth above, the market price of Exide common stock was artificially inflated during the Class Period. In ignorance of the fact that the market price of Exide common stock was artificially inflated, and relying directly or indirectly on the false and misleading statements made knowingly or with deliberate recklessness by Exide and the Individual Defendants, or upon the integrity of the market in which the shares traded, Plaintiff and other members of the Class purchased Exide stock during the Class Period at artificially high prices and, when the truth was revealed, were damaged thereby.

61.    Had Plaintiff and the other members of the Class and the marketplace known of the true facts, which were knowingly or recklessly concealed by Exide and the Individual Defendants, Plaintiff and the other members of the Class would not have purchased or otherwise acquired their Exide shares during the Class Period, or if they had acquired such shares during the Class Period, they would not have done so at the artificially inflated prices which they paid.

62.    By virtue of the foregoing, Exide and the Individual Defendants have violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. 17 C.F.R. §240.10-5

# COUNT II

## For Violation of §20(a) of the Exchange Act
## Against the Individual Defendants

63.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

64.     The Individual Defendants had control over Exide and made the material false and misleading statements and omissions on behalf of Exide within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their controlling shareholder status, executive positions, board membership, and stock ownership, and their culpable participation, as alleged above, the Individual Defendants had the power to influence and control and did, directly or indirectly, influence and control the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends were false and misleading. The Individual Defendants were provided with or had unlimited access to the Company's internal reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause them to be corrected.

65.     In particular, the Individual Defendants had direct involvement in and responsibility over the day-to-day operations of the Company and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein.

66.     By reason of such wrongful conduct, the Individual Defendants are liable pursuant to §20(a) of the Exchange Act. As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of the Company's common stock during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and the Class, prays for judgment as follows:

A.    Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff s counsel as Lead Counsel;

B.    Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.    Awarding such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiff demands trial by jury.

Dated:  April 15, 2013

GLANCY BINKOW & GOLDBERG LLP

By: _____

Lionel Z. Glancy
Michael Goldberg
Robert V. Prongay
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com

POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
Marc I. Gross
Jeremy A. Lieberman
Lesley F. Portnoy
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
migross@pomlaw.com
jalieberman@pomlaw.com
lfportnoy@pomlaw.com

POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone:  (312) 377-1181
Facsimile:  (312) 377-1184
pdahlstrom@pomlaw.com

BRONSTEIN GEWIRTZ
& GROSSMAN LLP
Peretz Bronstein
60 E. 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiff*

## Certification of Plaintiff
## Pursuant to Federal Securities Laws

1.    I, David M. Loritz, make this declaration pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995 as required by Section 21D (a) (2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed a Complaint against Exide Technologies. ("Exide"), and authorize a filing of a comparable complaint on my behalf.

3.    I did not purchase my Exide securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of a class as set forth in the Complaint, including providing testimony at deposition and trial, if necessary.   I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    To the best of my current knowledge, the attached sheet lists all of my purchases and sales in Exide securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws, except as follows:

7.    I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    The matters stated in this declaration are true to the best of my current knowledge, information and belief.

I declare under penalty or perjury that the foregoing is true and correct.

Executed    4 - 10 - 13
             **(Date)**

                                        **(Signature)**

                           David M. Loritz

                           **(Type or Print Name)**

**EXIDE TECHNOLOGIES (XIDE)**                    **Loritz, David M.**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 06/07/2012 | PUR | 4,070 | $3.3599 |
| 12/18/2012 | PUR | 4,060 | $3.1899 |
| 12/18/2012 | SLD | 4,070 | $3.1837 |

loritz

Name & Address:
Lionel Z. Glancy (SBN134180)
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| DAVID M. LORITZ, Individually and On Behalf of All Others Similarly Situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) v. | CV13-02607 SVW (Ex) |
| EXIDE TECHNOLOGIES, JAMES R. BOLCH, PHILLIP A. DAMASKA, R. PAUL HIRT, JR., MICHAEL OSTERMANN, | **SUMMONS** |
| DEFENDANT(S). | |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Lionel Z. Glancy_____, whose address is _1925 Century Park East, Suite 2100, Los Angeles, CA 90067, Tel:  (310) 201-9150_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

APR 1 5 2013

Dated: _____

By: _____**JULIE PRADO**_____

Deputy Clerk

*(Seal of the Court)*

1154

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

Name & Address:
Lionel Z. Glancy (SBN134180)
Glancy Binkow & Goldberg LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID M. LORITZ, Individually and On Behalf of All Others Similarly Situated, | CASE NUMBER |
| PLAINTIFF(S). | CV13-02607 SVW (Ex) |
| v. | |
| EXIDE TECHNOLOGIES, JAMES R. BOLCH, PHILLIP A. DAMASKA, R. PAUL HIRT, JR., MICHAEL OSTERMANN, | |
| DEFENDANT(S). | SUMMONS |

TO:     DEFENDANT(S):

A lawsuit has been filed against you.

Within ___21___ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, _Lionel Z. Glancy_____, whose address is _1925 Century Park East, Suite 2100, Los Angeles, CA 90067, Tel: (310) 201-9150_.   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

APR 1 5 2013

Clerk, U.S. District Court

Dated: _____          By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Stephen V. Wilson and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV13- 2607 SVW (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=======================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[_] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[_] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[_] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| DAVID M. LORITZ, Individually and On Behalf of All Others Similarly Situated, | EXIDE TECHNOLOGIES, JAMES R. BOLCH, PHILLIP A. DAMASKA, R. PAUL HIRT, JR., MICHAEL OSTERMANN, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Lionel Z. Glancy (SBN134180)<br>Glancy Binkow & Goldberg LLP<br>1925 Century Park East, Suite 2100, Telephone: (310) 201-9150 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No  ☑ **MONEY DEMANDED IN COMPLAINT: $** to be proved

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Sections 10(b) and 20(a) of the Securities Exchange Act and Violation of SEC Rule 10b-5

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE/PENALTY** | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☑ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Accommodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

## CV13-02607

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)  ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
 ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
 ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
 ☐ D.  Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | Plaintiff DAVID M. LORITZ - Green Bay, WI |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
|  | EXIDE TECHNOLOGIES, JAMES R. BOLCH, PHILLIP A. DAMASKA, R. PAUL HIRT, JR., MICHAEL OSTERMANN - Milton, GA |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County |  |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date April 15, 2013

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |